# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

AVON SLAY GRADY, )
)
    Plaintiff, )
)
v. ) Case No. CV409-103
)
GEORGIA DEPT. OF CORRECTION, )
and PARDON AND PAROLE BOARD, )
)
    Defendants. )

## REPORT AND RECOMMENDATION

Previously the Court directed plaintiff in this 42 U.S.C. § 1983 action to complete a Consent to Collection of Fees form and a Trust Account Statement. Plaintiff has submitted those forms to the Court, docs. 6, 7, and thus his action is ready to proceed.

The totality of what Grady alleges, presented in its original and uncorrected form, is this:

> I got lock up on Dec. 19, 2007 for trafficking in cocaine, I sign a waiver on on March 5, 2008, for 6 months for a 2 tech. violation, I, failed a drug test, 2 not reporting to drug class, I went to Coastal state prison June 3, 2008 for parole violation for the two tech. violation, in oct. 2008 the parole board sent me a grid sheet telling me to do 22 months off a charge; already did time for in Nov 10, 2005 to sept 5, 2007 which was a poss. of cocaine I got 30 do 5 I did 22 months, the parole board grid me on a old charge. i caught in Nov. 2005, so I did 12 month extra time under double jeopardy, because i never did commit a new crime to get a new grid sheet, i

sign a 6 month waiver, so i suppose to been parole out after my 6 months was was up, but instead i did 12 extra months, because the parole board made a mistake by gridding me on an old charge. And that's Double Jeopardy. my 5 Fifth Amendment rights was violate.

doc. 1 at 5.

The Court is unable to fathom the basic nature of Grady's claim -- whether he is complaining of constitutionally-violative parole board procedures, or is complaining of due process violations in his parole revocation. In any event, he asks "the court to repay me for every extra day [I] did in prison, because it cause[d] me suffering, and mental stresses, pain and emotion[al] breakdown, I'm having trouble dealing with stress and depressing me [sic] due to the extra time the parole board made me do, because they made a mistake." *Id.* at 6.

The right to proceed IFP in litigation in the federal district courts is governed by 28 U.S.C. § 1915. Litigants are not entitled as of right to proceed without the prepayment of a filing fee. IFP status, rather, is a privilege which may be denied when abused. The IFP statute therefore authorizes courts to dismiss cases sua sponte if: (1) the allegation of poverty is untrue, (2) the action is frivolous or malicious, (3) the complaint fails to state a claim upon which relief may be granted, or (4)

the complaint seeks money damages from a defendant who is immune from suit. 28 U.S.C. § 1915(e)(2). The power to sua sponte dismiss IFP cases "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Cofield v. Alabama Pub. Servs. Comm'n*, 936 F.2d 512, 515 (11th Cir. 1991); *see also* 28 U.S.C. § 1915A(b)(1)-(2).

In all cases, of course, substance must govern over nomenclature. *See Castro v. United States*, 540 U.S. 375, 381 (2003) ("Federal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category. . . . They may do so in order to avoid an unnecessary dismissal."); *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 164 (1984). Here, in substance, Grady seems to be challenging a state parole board determination. But how? Plaintiff's allegations are simply indecipherable. Yet answering that question is critical, because as one encyclopedist explains,

[t]he mere existence of a parole system does not create a liberty interest[1] in the parole release decision or a reasonable entitlement of prison inmates to due process protection in the parole *process*, since the possibility of parole provides no more than a mere hope that the benefit will be obtained. This is in contrast with parole *revocation* proceedings which must provide due process protections. When a release by parole depends on informed predictions, a prisoner cannot claim any entitlement to or due process liberty interest in a parole release.

59 AM.JUR.2D (*Pardon and Parole*) § 103 (May 2009) (footnotes omitted and added; emphasis added).

Meanwhile, it is settled that "a prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement [hence, a parole decision]. He must seek federal habeas corpus relief (or

---

[1] There is no constitutionally-protected right of a convicted person to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Grady thus has a protected liberty interest only if Georgia law creates such an interest. *Id.* at 12. It does not. *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2002) (citing *Sultenfuss v. Snow*, 35 F.3d 1494, 1501-03 (11th Cir. 1994) (en banc )), and cited in Michael B. Mushlin, 2 RIGHTS OF PRISONERS § 9:5 (3d ed. Oct. 2008); *see also Heard v. Georgia State Bd. of Pardons and Paroles*, 222 F. App'x 838, 840 (11th Cir. 2007) ("and there is no federal constitutional right to parole").

Grady may, however, have state law remedies, and that imports the exhaustion doctrine. *See, e.g., Stewart v. Georgia Bd. of Pardons and Parole*, 2008 WL 4816677 at * 2 (N.D. Ga. Oct. 31, 2008) (unpublished) (A defendant's petition for a writ of habeas corpus was subject to dismissal for failure to exhaust available state remedies. The defendant sought no review of his parole revocation in state court. The proper remedy would have been a writ of mandamus against the parole board or a state writ of habeas corpus). Grady has not pled that he exhausted his state law remedies here. Again, however, the Court is unable to divine what he is complaining about, so it cannot dismiss this case on non-exhaustion grounds.

appropriate state relief) instead." *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (quotes, cite and alteration omitted). That is why it has been said that the federal habeas statutes and § 1983 "are mutually exclusive: if a claim can be raised in a federal habeas petition, that same claim cannot be raised in a separate § 1983 civil rights action." *Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006).[2]

---

[2] Actually, the issue is more nuanced than that. *See, e.g., Terrell v. United States*, 564 F.3d 442, 447 (6th Cir. 2009) (Only for claims falling in the "core" of habeas, that is those necessarily implicating the fact or duration of confinement, does habeas provide the exclusive action; otherwise, there exist claims that can both be brought under habeas and § 1983, or an equivalent civil action). *Terrell* recognized a habeas-based challenge to federal parole procedures. Inmate Terrell had contended that the Federal Parole Commission violated statutory law and his due process rights when it denied his request for an in-person (versus by-video) hearing. *Id.* at 445. He did not contend that remedying the Commission's procedural violation would necessarily entitle him to an earlier release from custody. Release on federal parole, for that matter, is discretionary. *Id.*

The Sixth Circuit referred to a 1977 Sixth Circuit case holding that a federal prisoner could use a 28 U.S.C. § 2241 habeas petition to challenge the parole-denial *process*. *Id.* at 445-46. This was consistent with pre- and post-1977 Supreme Court precedent authorizing prisoners to bring, under the habeas-jurisdiction statutes: (1) a challenge of a prisoner's underlying conviction or sentence; (2) a claim that necessarily demonstrated the invalidity of the confinement's legality; or (3) a claim that would result in the restoration of good-time credits which necessarily shortens the duration of the prisoner's confinement. *Id.* at 446 (citing *Dotson*, 544 U.S. at 78-81; *Preiser v. Rodriguez*, 411 U.S. 475 1973); *Heck v. Humphrey*, 512 U.S. 477 (1994); and *Edwards v. Balisok*, 520 U.S. 641 (1997)).

However, "[i]n [*Wolff v. McDonnell*, 418 U.S. 539 1974)] and *Dotson*, the Court also held that challenges by state prisoners to procedures that would only lead to new proceedings, discretionary and not necessarily spelling immediate release or a shorter duration of confinement, may be brought under § 1983. *Dotson*, 544 U.S. at 81-82. . . ." *Terrell*, 564 F.3d at 446. The question thus arose in *Terrell* -- "whether habeas and § 1983 (or the equivalent for a federal prisoner) are mutually exclusive actions."

5

*Id.* *Dotson* "held that a claim, a constitutional challenge to parole procedures that would at most order a new discretionary hearing, akin to the claim before us, was properly brought under § *1983.*" *Id.* (emphasis added). So if the *Preiser* line of cases, especially those decided since the Sixth Circuit's 1977 decision, is read to mean that the actions are mutually exclusive, then the *Terrell* court lacked jurisdiction to entertain Terrell's habeas petition. *Id.*

The circuit courts have disagreed over the "mutually exclusive" the issue. *Id. Dotson*, the *Terrell* court concluded, resolved it. It held that challenges to parole procedures that would not "necessarily spell speedier release" and that claimed "future relief (which, if successful, [would] not necessarily imply the invalidity of confinement or shorten its duration)" were "yet more distant" from the "core" of habeas within which habeas is the exclusive available action. 544 U.S. at 82. Thus, such challenges could sound § 1983. *Id.* Yet, two concurring *Dotson* justices emphasized that that such claims could be brought under § 1983 but *not* under habeas. *Id.* at 85.

The *Terrell* court concluded that just because, under Supreme Court precedent, Terrell's claim (i.e., his challenge to procedures used in the administration of discretionary parole) might also fall under § 1983, that did not preclude § 2241 (habeas) jurisdiction over it. *Id.* at 448-49. In that sense, the two remedies are *not* mutually exclusive. *See also Stanfill v. Mich. Parole Bd.*, 2009 WL 2170142 at *1 (E.D. Mich. Jul 20, 2009) (unpublished) ("where a prisoner does not claim *immediate* entitlement to parole or seek a shorter sentence but instead lodges a challenge to the procedures used during the parole process as generally improper or improper as applied in his case, and that challenge will *at best* result in a new discretionary hearing the outcome of which cannot be predicted, we hold such a challenge cognizable under section 1983") (emphasis added).

Reaching Terrell's claim under § 2241, the Sixth Circuit held that the U.S. Parole Commission's use of videoconferencing to conduct Terrell's parole determination proceedings violated the Parole Commission Reorganization Act's requirement that a prisoner shall be allowed to "appear and testify" on his own behalf at the parole determination hearing. *Id.* at 449-55.

This Court will apply, through the "core habeas" filter, the *Heck* rule, which prevents a "collateral attack on [a] conviction through the vehicle of a civil suit." *Heck*, 512 U.S. at 484. Since § 1983 "creates a species of tort liability," 512 U.S. at 483, "the *Heck* rule" underscores "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments. . . ." *Heck*, 512 U.S. at 486. Thus, "[a] claim for damages that would necessarily imply the invalidity of the fact of an inmate's conviction, or necessarily imply the invalidity of the length of an inmate's sentence, is not cognizable unless and until the inmate

6

So, if Grady's claim is ultimately aimed at challenging the legality (i.e., the fact or ultimate length) of his confinement, it falls within the "core" of habeas corpus and thus may not be bought under § 1983. *Dotson*, 544 U.S. at 79. The problem here, of course, is that the Court cannot say either way because Grady has failed to describe clearly the facts supporting the state process that he now seeks to challenge.

Therefore, the Court will direct the plaintiff to clarify his claims. First, however, it will cull from Grady's case what is not actionable. For starters, Grady expressly advances his "Fifth Amendment rights," which means he raises a due process claim of some sort. Hence, he raises a Fourteenth Amendment due process claim since the state is the allegedly offending party here. It has been said, however, that "§ 1983 is not the

---

obtains favorable termination of a state, or federal habeas, challenge to the conviction or sentence." CJS CIVIL RIGHTS § 145 (*Generally*) (June 2009).

That does not mean that Grady's claim here could not be heard under § 1983. It depends on what he alleges. It could be founded under § 1983 if his "challenge . . . would only invalidate . . . parole eligibility procedures, [and] success would not spell an earlier release." *Thomas v. McDonough*, 228 F. App'x 931, 931 (11th Cir. 2007). In *Thomas*, the inmate challenged the retroactive application of amended state parole guidelines allowing for a parole review every two years, instead of every year as provided in the guidelines in effect at the time appellant was convicted. Because a successful challenge would not *immediately* implicate his release from confinement, this fell on the § 1983 side of the *Dotson* line, so his ex post facto violation claim could not be brought under § 2254, only § 1983. *Id.* at 932. Here, as noted above, the Court cannot say either way because Grady's writing is impenetrably unclear.

proper vehicle through which to contest parole determinations, as Georgia prisoners lack a protected due-process liberty interest in parole. *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001) (per curiam) (citing *Sultenfuss v. Snow*, 35 F.3d 1494, 1501-03 (11th Cir.1994) (en banc))." *Florence v. Donald*, 2008 WL 1758796 at * 2 (S.D. Ga. Apr. 16, 2008) (unpublished). Under *Jones*, then, he could not advance a § 1983 claim on due process grounds in any event.

Yet, both *Jones* itself and post-*Jones* cases demonstrate that he can.[3] *See, e.g., Evans v. Nix*, 2007 WL 1316116 (11th Cir. May 7, 2007)

---

[3] The *Jones* panel noted that in his

> 42 U.S.C. § 1983 action[,] Jones assert[ed] several claims. First, he assert[ed] that the [Georgia Parole] Board's failure to grant face-to-face meetings as part of his parole procedure and its use of false information in his file constituted a due process violation. Second, he appear[ed] to assert that the Board discriminated against him on the basis of poverty in violation of the Equal Protection Clause by failing to adhere to its own rules and procedures. Finally, Jones allege[d] that the 1986 amendments to the Parole Board Rules and Regulations governing the frequency of reconsideration hearings for inmates serving a life sentence constitute[d] a violation of the ex post facto clause and are thus invalid. The amended rules provide[d], "Reconsideration of those inmates serving life sentences who have been denied parole shall take place at least every eight years." Ga. Comp. R. & Regs. r. 475-3-.05(2).

*Jones*, 279 F.3d at 946. The *Jones* panel first held this:

> Jones's *due process* claim is *foreclosed* by our holding in *Sultenfuss v. Snow*, 35 F.3d 1494 (11th Cir.1994) (en banc), that a Georgia inmate has no liberty interest in parole. It also is well-settled that there is no federal constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Only when a state maintains a

(unpublished). A district court recently touched on, but did not reconcile, the "harmonic divergence" here. *Davis v. New York State Div. of Parole*, 2008 WL 3891524 at * 8-9 (S.D.N.Y. Aug 20, 2008) (unpublished) (reaching and rejecting argument that prior habeas attempt at resolving due-process based, parole revocation claim foreclosed § 1983 action on it, citing *Anderson v. Ga. Pardons and Parole Bd.*, 165 F. App'x 726, 729 (11th Cir. 2006), but then noting that plenty of cases recognize the claim under § 1983). Clarification from Grady is thus required.

---

parole system that creates a legitimate expectation of parole does it establish a liberty interest in parole that is subject to the protections of the Due Process Clause. *Id.* at 12, 99 S.Ct. 2100.

*Id.* (emphasis added). Yet, in the very next paragraph, the court reached Jones's due process claim:

While we have held that the use of false information in a parole file can be a due process violation, prisoners cannot make a conclusory allegation regarding the use of such information as the basis of a due process claim. *Monroe v. Thigpen*, 932 F.2d 1437, 1442 (11th Cir.1991). Without evidence of the Board's reliance on false information, a prisoner cannot succeed. As Jones did not come forward with any false information relied on by the Board, the district court did not err in dismissing his due process claims under § 1915(e)(2)(B)(i).

*Id.*; *see also Hutchins v. Members of Ga. Bd. of Pardons and Paroles*, 2007 WL 2570769 at * 2 (N.D.Ga. Aug. 30, 2007) (unpublished) ("A Georgia state prisoner does not have a liberty interest in parole, and he may not pursue a claim in federal court alleging that the Board's exercise of its discretion to deny him parole was a violation of his due process rights. *See Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001). Nevertheless, 'the use of false information in a parole file can be a due process violation .' *Id.* Even so, a prisoner 'cannot make a conclusory allegation regarding the use of such information as the basis of a due process claim.' *Id.*").

The only other constitutional grounds Grady seems to raise here are those falling under the Constitution's Double Jeopardy Clause. However, "the Double Jeopardy Clause does not apply to parole proceedings. *See Jonas v. Wainwright*, 779 F.2d 1576, 1577 (11th Cir.1986) ('The [D]ouble [J]eopardy [C]lause does not apply to parole revocation proceedings.'); *United States v. Whitney*, 649 F.2d 296, 297 (5th Cir.1981) (finding that the Double Jeopardy Clause was not violated where the state parole board considered certain evidence in a second probation revocation proceeding that had formed the basis for a prior probation revocation proceeding)." *Ortiz-Alvear v. Wells*, 2009 WL 1811544 at * 6 (S.D. Ga. June 24, 2009) (unpublished). So, the Court resolves that claim against him now.

To summarize, the Court requires clarification from Grady, due to the incoherency of his allegations. Within 20 days of the date this Order is served, then, he must file an "Amendment to Petition." To that end, he need only include the caption of this case atop a piece of paper and, under it, take the time to state clearly, in complete sentences, what it is he is complaining about. Because the Court could may conclude that his

case sounds in habeas, he should specify what state court remedies, if any, he has pursued (i.e., he must show exhaustion. *See supra* n. 1).

**SO REPORTED AND RECOMMENDED** this  10th  day of September, 2009.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**